**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MAY 2 1 2014

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **4:14CR150 JAR/TCM** |
| | ) | |
| ANWER RAO, | ) | Counts I, II, III, IV and V |
| MICHAEL LENTSCH, | ) | Counts I, II, III, IV and V |
| MATTHEW FIEDLER, | ) | Counts I and II |
| LARRY FARMER, JR., | ) | Counts I, II and IV |
| CHARLES KINNEY, | ) | Counts I and II |
| BRANDIEN ROBINSON, and | ) | Counts I, II and IV |
| MANSI PATEL, | ) | Counts I, II and IV |
| | ) | |
| Defendants. | ) | |

## INDICTMENT

### COUNT I

The Grand Jury charges that:

A.    Beginning sometime in 2011, and continuing to on or about July 25, 2012, with

the exact dates unknown, in the Eastern District of Missouri and elsewhere,

**ANWER RAO,**
**MICHAEL LENTSCH,**
**MATTHEW FIEDLER,**
**LARRY FARMER, JR.,**
**CHARLES KINNEY,**
**BRANDIEN ROBINSON, and**
**MANSI PATEL,**

the defendants herein, did knowingly and unlawfully combine, conspire, agree, and confederate

together with each other and other persons, both known and unknown to the Grand Jury, to

distribute and to possess with the intent to distribute Schedule I controlled substances and

Schedule I controlled substance analogues intended for human consumption, in violation of Title 21, United States Code, Sections 841(a)(1) and 813.

        B.     MANNER AND MEANS OF THE CONSPIRACY

        1.     It was part of the drug-trafficking conspiracy that defendants RAO and LENTSCH would import chemicals from other countries including China, to various locations in the United States.

        2.     It was further part of the drug-trafficking conspiracy that the imported chemicals would often have misleading labels, manifests or declarations regarding contents, in order to avoid detection by law enforcement officers.

        3.     It was further part of the drug-trafficking conspiracy that defendants RAO, FIELDLER, and others would liquefy the chemicals through a process of adding denatured alcohol and/or acetone.

        4.     It was further part of the drug-trafficking conspiracy that defendants RAO, FIELDLER, and others would spray the liquefied chemicals on herbs, such as Damiana, creating synthetic drugs.

        5.     It was further part of the drug trafficking conspiracy that defendants RAO, FIELDLER, and others would add flavorings, such as "Tasty Puff," to enhance the consumption of the synthetic drugs.

        6.     It was further part of the drug-trafficking conspiracy that the synthetic chemicals would contain controlled substances and/or controlled substance analogues including but not limited to:

            a)     1-pentyl-3-(1-naphthoyl)indole, also known as "JWH-018;"

            b)     1-pentyl-3-(4-methyl-1-naphythoyl)indole, also known as "JWH-122;"

2

c) 1-pentyl-3-(2-methoxyphenylaceityl)indole, also known as "JWH-250;"

d) 1-(5-fluoropentyl)-3-(1-naphthoyl)indole, also known as "AM-2201;"

e) 2-Pyrrolidinovalerophenone, also known as "a-PVP;"

f) N-(1-adamantyl)-1-pentyl-1H-indazole-3-carboxamide, also known as "AKB48" and "APINACA;" and

g) 1-pentyl-3-(1-naphthyl) indole, also known as "XLR-11" and "5-flouro-UR-144."

7. It was further part of the drug-trafficking conspiracy that the defendants RAO and LENTSCH would periodically change chemicals in an attempt to avoid federal drug scheduling regulations while still producing synthetic drugs which had the same physiological effect creating a "high" that mimics the effects of a controlled substance.

8. It was further part of the drug-trafficking conspiracy that defendants RAO, LENTSCH, FARMER, JR., KINNEY, ROBINSON, PATEL, and others would package the synthetic drugs, consisting of controlled substances and controlled substance analogues into foil packets or vials, in one or three gram quantities, for sale.

9. The synthetic products would be consumed primarily by smoking or snorting the substance in order to obtain a "high."

10. It was further part of the drug-trafficking conspiracy that the synthetic drugs were sold under names including but not limited to: "Mad Hatter," "Primo," "Optima," "Cloud 9," "Cloud 9 Deew," and "Crazy Eyes."

11. It was further part of the drug-trafficking conspiracy that "Mad Hatter," "Primo," "Optima," "Cloud 9," "Cloud 9 Deew," "Crazy Eyes," and other packaged synthetic

3

drugs would be intended for human consumption although they carried "a not for human consumption" label in an attempt to thwart drug-trafficking laws.

12.     It was further part of the drug-trafficking conspiracy that the organization set up locations for packaging the synthetic drugs including a warehouse in North St. Louis City, Missouri, a warehouse in Phoenix, Arizona, and residences in O'Fallon, Illinois, and Keyesport, Illinois.

13.     It was further part of the drug-trafficking conspiracy that defendants RAO, LENTSCH, and others had an exclusive agreement to sell packaged synthetic drugs to Greg Sloan, d/b/a NEB Distributing, LLC, and Silver Rocket, LLC, which, in turn, would distribute the packaged synthetic drugs over the internet and to retail establishments.

14.     It was further part of the drug-trafficking conspiracy that defendants RAO, LENTSCH, and others could not keep up with demand and contracted with Driftwood of Arizona, including defendant PATEL, to manufacture and provide them with synthetic drugs.

15.     It was further part of the drug-trafficking conspiracy that defendants RAO, LENTSCH, and others would also sell a portion of the packaged synthetic drugs through their own retail establishments including THA GRIND, which had a location in Edwardsville, Illinois, and South St. Louis County, Missouri.

16.     It was further part of the drug-trafficking conspiracy that the packaged synthetic drugs were often located next to products and paraphernalia utilized for smoking the substances.

All in violation of Title 21, United States Code, Section 846.

4

## COUNT II

The Grand Jury further charges that:

A.    Beginning in or before 2011, and continuing to on or about July 25, 2012, with the exact dates unknown, in the Eastern District of Missouri and elsewhere,

**ANWER RAO,**
**MICHAEL LENTSCH,**
**MATTHEW FIEDLER,**
**LARRY FARMER, JR.,**
**CHARLES KINNEY,**
**BRANDIEN ROBINSON, and**
**MANSI PATEL,**

the defendants herein, did knowingly and unlawfully combine, conspire, agree, and confederate together with each other and other persons, both known and unknown to the Grand Jury, with the intent to defraud and mislead, to:

a)    cause the introduction of misbranded drugs into interstate commerce, in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2);

b)    receive and cause the receipt of misbranded drugs in interstate commerce and to deliver and proffer delivery thereof for pay or otherwise, in violation of Title 21, United States Code, Sections 331(c) and 333(a)(2); and

c)    do and cause to be done acts with respect to drugs, while such drugs were held for sale after being shipped in interstate commerce that resulted in such drugs being misbranded, in violation of Title 21, United States Code, Sections 331(k) and 333(a)(2).

B.    MANNER AND MEANS OF THE CONSPIRACY

1.    The allegations set forth in paragraphs 1 through 16 of the Manner and Means section of Count I are re-alleged and fully incorporated herein.

5

2. It was part of the misbranding conspiracy that the defendants would manufacture and package synthetic drugs for purposes of retail either directly or indirectly through NEB Distributing, LLC, and Silver Rocket Distributing, LLC, which would be shipped and sold throughout the United States.

3. It was part of the misbranding conspiracy that defendants and their retailers falsely and misleadingly referred to their synthetic drug products as "incense," "herbal incense," "potpourri," "herbal sachets," and other erroneous names when, in fact, such products were synthetic drugs intended for consumption in order to obtain a physiological effect of a "high."

4. Each of the drugs was misbranded in at least one of the following respects:

a) the synthetic drugs' packaging did not bear adequate directions for use;

b) the synthetic drugs were falsely labeled in a manner indicating they were not for human consumption when, in fact, the synthetic drugs were intended for human consumption;

c) the synthetic drugs' packaging failed to accurately identify the contents and intended use;

d) the synthetic drugs' packaging did not bear a label containing the name and place of the business, the manufacturer, packer, or distributor; and

e) the synthetic drugs' labeling did not include adequate warnings against unsafe dosages, methods, or durations of administration or application, in such manner and form as were necessary for the protection of users of the drugs.

6

5. Defendants intended to defraud and mislead government authorities regarding the products' status as synthetic drugs with the purpose of avoiding regulation over the drugs and enabling themselves to continue selling the drugs in exchange for money.

C. OVERT ACTS

1. Defendants committed overt acts in furtherance of the conspiracy, including, but not limited to, the following:

a) shipped/transported misbranded synthetic drugs to NEB Distributing, LLC, and Silver Rocket Distributing, LLC, located in St. Charles County, Missouri;

b) shipped/transported misbranded synthetic drugs to THA GRIND, located in Edwardsville, Illinois;

c) shipped/transported misbranded synthetic drugs to THA GRIND, located in South St. Louis County, Missouri;

d) sold/shipped misbranded synthetic drugs marketed over the internet and through both THA GRIND locations; and

e) shipped samples of the synthetic drugs to a lab in Virginia for testing, the results of which were fraudulently utilized in the marketing of the synthetic drugs.

All in violation of Title 18, United States Code, Section 371.

7

## COUNT III

The Grand Jury further charges that:

A. Beginning sometime in 2011, and continuing through July, 2012, with the exact dates unknown to this Grand Jury, in the Eastern District of Missouri and elsewhere,

### ANWER RAO and
### MICHAEL LENTSCH,

the defendants herein, did conspire with others known and unknown to this Grand Jury, to knowingly engage and attempt to engage in the following monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally-derived property of a value greater than $10,000, that is the wire transfer of funds, such property having been derived from a specified unlawful activity, that is, conspiracy to distribute and possess with the intent to distribute Schedule I controlled substances and Schedule I controlled substance analogues for human consumption, in violation of Title 21, United States Code, Sections 841(a)(1), 846, and 813, as described in Count I.

B. MANNER AND MEANS OF THE CONSPIRACY

1. From on or about November 22, 2004, through July 2012, defendant LENTSCH served as an officer and on the Board of Directors of OPM Midwest, Inc. (herein "OPM Midwest"). OPM Midwest was formed in the State of Illinois and was registered at 105 Mill Street, O'Fallon, Illinois 62269. Defendant LENTSCH was listed as the President of OPM Midwest. Defendant RAO was listed as the Secretary of OPM Midwest.

2. OPM Midwest has a State of Missouri Certificate of Authority to operate in the State of Missouri as a foreign corporation. On the application, defendant LENTSCH was

8

listed as the President, the Secretary, and as a member of the Board of Directors of OPM Midwest.

3.     Defendants RAO and LENTSCH used the corporation OPM Midwest to operate store fronts named THA GRIND located at 1009 Century Drive, Edwardsville, Illinois, and 3559 Ritz Center Place, St. Louis, Missouri. Beginning sometime during the calendar year 2010, through and including July 2012, defendants RAO and LENTSCH used these store fronts and the THA GRIND's Facebook page to market and distribute synthetic drugs marketed as "incense," "herbal incense," "potpourri," "herbal sachets," and other erroneous names under the brand name "Cloud 9" and the different types of drug paraphernalia needed to consume the same.

4.     In March 2011, defendants RAO and LENTSCH formed the corporation TS Botanical, Inc. (hereafter "TS Botanical"). TS Botanical was formed in the State of Illinois with its initial registered offices located at 3601 N. Belt West, Belleville, Illinois. Defendants RAO and LENTSCH were listed as the directors of TS Botanical. Defendants RAO and LENTSCH used the corporation TS Botanical to manufacture, market, and distribute synthetic drugs marketed as herbal incense under the brand name "Cloud 9."

5.     From on or about April 5, 2011, through May 2012, Department of Homeland Security Investigations officers seized twenty-seven (27) shipments that contained the following: (1) JWH-081, (1) JWH-250, (15) AM-2201, (1) 5-Fluoro-144, (4) a-PVP, and (1) XLR-11, which were analogues of a Schedule 1 controlled substance. These shipments were addressed to defendants LENTSCH and/or RAO, a business owned by defendants LENTSCH and/or RAO, an associate of defendants LENTSCH and/or RAO, or a business associate of defendants LENTSCH and/or RAO.

9

6. From November 2010 through at least June 23, 2012, defendants RAO and LENTSCH manufactured and distributed synthetic drugs to Gregory Sloan, d/b/a NEB Distributing, LLC, and Silver Rocket Distributing, LLC, headquartered in St. Charles, Missouri. Defendants RAO and LENTSCH manufactured and/or contracted to have these substances manufactured in the following cities: St. Louis, Missouri; O'Fallon, Illinois; Keyesport, Illinois; Evansville, Indiana; and Phoenix, Arizona. After the manufacturing process was completed, the finished product was sold and delivered to Gregory Sloan, d/b/a NEB Distributing, LLC, and Silver Rocket Distributing, LLC.

7. As part of their agreement, defendants RAO and/or LENTSCH emailed Gregory Sloan and Sloan's office manager an invoice for the substances delivered. The invoices were addressed as follows: From: TS Botanicals, 105 Mill Drive, O'Fallon, Illinois; To: Greg Sloan at NEB Distributing, St. Louis, MO, with an option to pay the invoice online. Defendants RAO and/or LENTSCH sent the invoices from their email accounts (opmmidwest@yahoo.com and/or tsbotanicals@yahoo.com) to Gregory Sloan and/or his office manager at one of their email addresses.

8. From April 2011 through June 29, 2012, defendants RAO and LENTSCH collected and deposited a total of $12,510,989.00 into TS Botanicals, Inc.'s US Bank account ending in 68498. For that same time period, defendants RAO and LENTSH invoiced, collected and deposited at least $10,119,040.00 in checks and cash into TS Botanicals, Inc.'s US Bank account ending in 68498 that originated from Gregory Sloan, d/b/a NEB Distributing, LLC.

10

9. From April 2011 through June 2012, defendants RAO and LENTSCH engaged in numerous financial transactions (i.e. account transfers) with the funds on deposit in TS Botanicals, Inc.'s US Bank account ending in 68498 to other accounts they controlled at US Bank.

10. From April 2011 through June 2012, defendants RAO and LENTSCH engaged in numerous financial transactions (i.e. wire transfers) with the funds on deposit in TS Botanicals, Inc.'s US Bank account ending in 68498 to finance the purchase of the synthetic drugs used in the manufacturing process. Specifically, during this time period, defendants RAO and LENTSCH wire transferred over $1,948,000.00 to Source 1 Herbs and over $452,000.00 to Mountain Industries, LLC, for the purchase of synthetic drugs. These wire transfers included, but are not limited to, the following:

| ITEM | DATE | MONETARY TRANSACTION |
|-------|------------|---------------------------------------------------------------------|
| 1 | 05/03/2011 | RAO and LENTSCH wire transferred $24,000.15 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Mountain Industry, LLC's bank account ending in 2961. |
| 2 | 05/12/2011 | RAO and LENTSCH wire transferred $24,000.15 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Mountain Industry, LLC's bank account ending in 2961. |
| 3 | 05/24/2011 | RAO and LENTSCH wire transferred $38,000.15 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Mountain Industry, LLC's bank account ending in 2961. |
| 4 | 06/08/2011 | RAO and LENTSCH wire transferred $110,000.15 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Mountain Industry, LLC's bank account ending in 2961. |
| 5 | 06/08/2011 | RAO and LENTSCH wire transferred $110,000.15 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Mountain Industry, LLC's bank account ending in 2961. |
| 6 | 07/15/2011 | RAO and LENTSCH wire transferred $50,000.15 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Mountain Industry, LLC's bank account ending in 2961. |
| 7 | 07/18/2011 | RAO and LENTSCH wire transferred $41,000.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce account. |

11

| ITEM | DATE | MONETARY TRANSACTION |
|------|------|----------------------|
| 8 | 08/01/2011 | RAO and LENTSCH wire transferred $50,000.15 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Mountain Industry, LLC's Bank of America account ending in 2961. |
| 9 | 08/11/2011 | RAO and LENTSCH wire transferred $96,000.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce account. |
| 10 | 08/29/2011 | RAO and LENTSCH wire transferred $48,000.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce account. |
| 11 | 09/02/2011 | RAO and LENTSCH wire transferred $46,000.15 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Mountain Industry, LLC's Bank of America account ending in 2961. |
| 12 | 09/12/2011 | RAO and LENTSCH wire transferred $19,200.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce. |
| 13 | 09/19/2011 | RAO and LENTSCH wire transferred $96,000.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce account. |
| 14 | 10/03/2011 | RAO and LENTSCH wire transferred $48,000.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce account. |
| 15 | 10/06/2011 | RAO and LENTSCH wire transferred $48,000.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce account. |
| 16 | 10/12/2011 | RAO and LENTSCH wire transferred $175,000.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce account. |
| 17 | 11/04/2011 | RAO and LENTSCH wire transferred $175,000.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce account. |
| 18 | 11/16/2011 | RAO and LENTSCH wire transferred $15,600.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce account. |

| ITEM | DATE | MONETARY TRANSACTION |
|------|------|----------------------|
| 19 | 11/22/2011 | RAO and LENTSCH wire transferred $30,000.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce account. |
| 20 | 12/02/2011 | RAO and LENTSCH wire transferred $215,600.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' Canadian Imperial Bank of Commerce account. |
| 21 | 12/19/2011 | RAO and LENTSCH wire transferred $252,400.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce account. |
| 22 | 01/06/2012 | RAO and LENTSCH wire transferred $20,000.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce account. |
| 23 | 01/11/2012 | RAO and LENTSCH wire transferred $20,000.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce account. |
| 24 | 01/17/2012 | RAO and LENTSCH wire transferred $80,600.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce account. |
| 25 | 02/01/2012 | RAO and LENTSCH wire transferred $80,000.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce account. |
| 26 | 02/03/2012 | RAO and LENTSCH wire transferred $20,000.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce account. |
| 27 | 02/03/2012 | RAO and LENTSCH wire transferred $26,020.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce account. |
| 28 | 02/13/2012 | RAO and LENTSCH wire transferred $175,000.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce account. |
| 29 | 02/17/2012 | RAO and LENTSCH wire transferred $50,850.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce account. |

| ITEM | DATE | MONETARY TRANSACTION |
|------|------|----------------------|
| 30 | 02/21/2012 | RAO and LENTSCH wire transferred $45,000.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's Canadian Imperial Bank of Commerce account. |
| 31 | 03/27/2012 | RAO and LENTSCH wire transferred $12,109.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's First Caribbean International Wealth Management Center, Warrens, St. Michael, Barbados account. |
| 32 | 04/11/2012 | RAO and LENTSCH wire transferred $63,000.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' First Caribbean International Wealth Management Center, Warrens, St. Michael, Barbados account. |
| 33 | 04/13/2012 | RAO and LENTSCH wire transferred $258,650.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's First Caribbean International Wealth Management Center, Warrens, St. Michael, Barbados account. |
| 34 | 05/16/2012 | RAO and LENTSCH wire transferred $100,000.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's First Caribbean International Wealth Management Center, Warrens, St. Michael, Barbados account. |
| 35 | 06/29/2012 | RAO and LENTSCH wire transferred $300,000.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Source 1 Herbs' LLC's First Caribbean International Wealth Management Center, Warrens, St. Michael, Barbados account. |

11.     From February 2012 through June 2012, defendants RAO and LENTSCH engaged in numerous financial transactions (i.e. wire transfers) with the funds on deposit in TS Botanicals, Inc.'s US Bank account ending in 68498 to finance the manufacturing of the synthetic drugs they sold to Gregory Sloan, d/b/a NEB Distributing, LLC, and Silver Rocket Distributing, LLC. Specifically, during this time period, defendants RAO and LENTSCH wire transferred over $388,700.38 to Roger Upchurch, d/b/a Driftwood of Arizona, as follows:

| ITEM | DATE | MONETARY TRANSACTION |
|------|------|----------------------|
| 36 | 02/21/2012 | RAO and LENTSCH wire transferred $12,050.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Driftwood of Arizona's JP Morgan Chase account ending in 2348. |

14

| ITEM | DATE | MONETARY TRANSACTION |
|------|------|----------------------|
| 37 | 02/24/2012 | RAO and LENTSCH wire transferred $20,016.91 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Driftwood of Arizona's JP Morgan Chase account ending in 2348. |
| 38 | 03/02/2012 | RAO and LENTSCH wire transferred $50,132.28 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Driftwood of Arizona's JP Morgan Chase account ending in 2348. |
| 39 | 03/05/2012 | RAO and LENTSCH wire transferred $25,000.00 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Driftwood of Arizona's JP Morgan Chase account ending in 2348. |
| 40 | 03/16/2012 | RAO and LENTSCH wire transferred $44,556.38 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Driftwood of Arizona's JP Morgan Chase account ending in 2348. |
| 41 | 03/23/2012 | RAO and LENTSCH wire transferred $35,096.97 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Driftwood of Arizona's JP Morgan Chase account ending in 2348. |
| 42 | 04/02/2012 | RAO and LENTSCH wire transferred $35,096.97 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Driftwood of Arizona's JP Morgan Chase account ending in 2348. |
| 43 | 04/13/2012 | RAO and LENTSCH wire transferred $39,588.82 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Driftwood of Arizona's JP Morgan Chase account ending in 2348. |
| 44 | 04/20/2012 | RAO and LENTSCH wire transferred $26,255.14 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Driftwood of Arizona's JP Morgan Chase account ending in 2348. |
| 45 | 05/04/2012 | RAO and LENTSCH wire transferred $17,313.95 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Driftwood of Arizona's JP Morgan Chase account ending in 2348. |
| 46 | 05/11/2012 | RAO and LENTSCH wire transferred $44,226.99 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Driftwood of Arizona's JP Morgan Chase account ending in 2348. |
| 47 | 05/18/2012 | RAO and LENTSCH wire transferred $17,130.27 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Driftwood of Arizona's JP Morgan Chase account ending in 2348. |

| ITEM | DATE | MONETARY TRANSACTION |
|------|------|----------------------|
| 48 | 06/11/2012 | RAO and LENTSCH wire transferred $12,502.65 from TS Botanicals, Inc.'s US Bank account ending in 68498 to Driftwood of Arizona's JP Morgan Chase account ending in 2348. |

All in violation of Title 18, United States Code, Sections 1957 and 1956(h).

## COUNT IV

The Grand Jury further charges that:

Beginning sometime in 2011, and continuing to on or about July 25, 2012, with the exact dates unknown, in the Eastern District of Missouri and elsewhere,

**ANWER RAO,**
**MICHAEL LENTSCH,**
**LARRY FARMER, JR.,**
**BRANDIEN ROBINSON, and**
**MANSI PATEL,**

the defendants herein, did knowingly and unlawfully combine, conspire, agree, and confederate together with each other and other persons, both known and unknown to the Grand Jury, to import Schedule I controlled substances and Schedule I controlled substance analogues intended for human consumption as provided in Title 21, United States Code, Section 813, into the United States from a place outside thereof.

All in violation of Title 21, United States Code, Sections 952, 960(a)(1), 960(b)(3), and 963.

16

## COUNT V

The Grand Jury further charges that:

A.     Beginning sometime in 2011, and continuing to on or about July 25, 2012, with the exact dates unknown, in the Eastern District of Missouri and elsewhere,

### ANWER RAO and
### MICHAEL LENTSCH,

the defendants herein, did knowingly and unlawfully combine, conspire, agree, and confederate together with each other and other persons, both known and unknown to the Grand Jury, to receive, conceal, buy, sell or in any manner facilitate the transportation of merchandize after importation, knowing the same to have been imported or brought into the United States contrary to law, to wit: merchandise imported with false, forged, or fraudulent invoice or other document or paper, in violation of Title 18, United States Code, Section 545.

B.     OVERT ACTS

1.     Defendants committed overt acts in furtherance of the conspiracy, including, but not limited to, causing the shipment of the following controlled substance analogues from the Country of China into the United States:

| Date | Addressee | Manifested contents | Lab analysis |
|------|-----------|---------------------|--------------|
| 4/5/11 | OPM Midwest (Ill) | Ascorbic Acid | JWH-081 |
| 4/5/11 | OPM Midwest (Ill) | Diacetone Acrylamide | AM-2201 |
| 5/8/11 | Mike Lentsch (Mo) | Brightening Agent | AM-2201 |
| 10/25/11 | Mansi P (Ariz) | Glass Pigment MSDS ATTH | AM-2201 |
| 10/25/11 | Mansi P (Ariz) | Glass Pigment | AM-2201 |
| 1/12/12 | Mansi P (Ariz) | Glass Sample | JWH-018 |
| 3/17/12 | Anwer Rao (Ariz) | Sample | AM-2201 |

17

| 4/22/12 | Anwer Rao (Ariz) | Sample | AM-2201 |
| 4/19/12 | Larry Farmer (Ill) | Matt Hardener | AM-2201 |
| 5/7/12 | OPM Midwest (Ill) | Accessories | AM-2201 |
| 5/7/12 | R&L Investments (Mo) | Accessories | AM-2201 |
| 5/7/12 | Tha Grind (Mo) | Lithopone | AM-2201 |
| 5/8/12 | Tha Grind (Mo) | Sample of Zeolite | 5-Fluoro-UR-144 |
| 5/23/12 | Bellevegas Liquor (Ill) | Barium Sulfate | A-PVP |
| 5/23/12 | Tha Grind(Mo) | Zinc Borate | A-PVP |
| 5/23/12 | OPM Midwest (Ill) | Calcium Sterate | A-PVP |
| 5/23/12 | R&L Investments (Mo) | Aluminum Oxide | A-PVP |
| 5/23/12 | B Robinson (Ill) | Pearl Pigment | A-PVP |
| 5/25/12 | OPM Midwest (Ill) | Titanium Dioxide | XLR-11 |

2.      Defendants would transport the received controlled substance analogues to locations in Illinois, Arizona, and Missouri for purposes of manufacturing synthetic drugs.

3.      Defendants, doing business as BPB Labs, would sell and ship a portion of the received controlled substance analogues to locations throughout the United States.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1.      Pursuant to Title 21, United States Code, Section 853(a), upon conviction of an offense in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 813, as set forth in Count I of this Indictment, the defendants ANWER RAO, MICHAEL LENTSCH,

18

MATTHEW FIEDLER, LARRY FARMER, JR., CHARLES KINNEY, BRANDIEN ROBINSON, and MANSI PATEL shall forfeit to the United States of America:

a)      any property, constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as a result of such violation;

b)      any property used, or intended to be used, in any manner or part to commit or to facilitate the commission of such offenses; and

c)      a sum of money equal to the total property constituting, or derived from, any proceeds obtained directly or indirectly as a result of such violations.

2.      Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Sections 1957 and 1956(h), as set forth in Count III of the Indictment, the defendants ANWER RAO and MICHAEL LENTSCH shall forfeit to the United States of America:

a)      any property, real or personal, involved in said offense or any property, real or personal, traceable to such property; and

b)      a sum of money equal to the total value of property, real or personal, involved in said offense and all property, real or personal, traceable to such violations.

3.      Pursuant to Title 21, United States Code, Section 853(a) and 970, upon conviction of an offense in violation of Title 21, United States Code, Sections 952, 960, and 963, as set forth in Count IV of this Indictment, the defendants ANWER RAO, MICHAEL LENTSCH, LARRY FARMER, JR., BRANDIEN ROBINSON, and MANSI PATEL shall forfeit to the United States of America:

a)      any property, constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as a result of such violation;

19

b) any property used, or intended to be used, in any manner or part to commit or to facilitate the commission of such offenses; and

c) a sum of money equal to the total property constituting, or derived from, any proceeds obtained directly or indirectly as a result of such violations.

4. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of a conspiracy to violate section Title 18, United States Code, Section 545, in violation of Title 18, United States Code, Section 371, as set forth in Count V of the Indictment, the defendants ANWER RAO and MICHAEL LENTSCH shall forfeit to the United States of America:

a) any property, real or personal, which constitutes or is derived from proceeds traceable to said violation(s).

b) a sum of money equal to the total property constituting, or derived from, any proceeds obtained directly or indirectly as a result of such violations.

5. Specific property subject to forfeiture includes, but is not limited to, the following:

| | Property Description | Approx. Value |
|---|---|---|
| a) | U.S. currency - 7072 Milburn Est | $ 156,350.00 |
| b) | silver bars and gold coins - 7072 Milburn Est | $ 50,000.00 |
| c) | U.S. currency - Tha Grind, Edwardsville | $ 1,790.00 |
| d) | U.S. currency - Tha Grind, St. Louis | $ 6,004.00 |
| e) | U.S. currency - 105 Mill | $ 12,530.00 |
| f) | US Bank account ending in 9413 | $ 173,790.52 |
| g) | US Bank account ending in 0197 | $ 16,449.93 |

20

| | | |
|---|---|---|
| h) | US Bank account ending in 9371 | $ 229,270.85 |
| i) | US Bank account ending in 5284 | $  20,544.93 |
| j) | US Bank account ending in 9405 | $ 20, 629.08 |
| k) | US Bank account ending in 5235 | $ 460,174.05 |
| l) | US Bank account ending in 6308 | $ 286,844.42 |
| m) | US Bank account ending in 8225 | $ 204,747.74 |
| n) | US Bank account ending in 5628 | $  50,128.08 |
| o) | US Bank account ending in 8498 | $ 942,514.93 |
| p) | US Bank account ending in 5250 | $1,000,000.00 |
| q) | Morgan Keegan account ending in 3678 | $577,384.40 |
| r) | Morgan Keegan account ending in 6113 | $113,655.02 |
| s) | Morgan Keegan account ending in 0545 | $582,115.11 |
| t) | Morgan Keegan account ending in 5776 | $113,404.20 |
| u) | Metlife contract ending in 3991 | $100,295.65 |
| v) | Metlife contract ending in 4007 | $100,295.65 |

w)      105 Mill Drive, O'Fallon, IL, further described as Lot No. 45 of "Countryside Glen," reference being had to the plat thereof recorded in the Recorder's Office of St. Clair County, Illinois, in Book of Plats "72" on page 68;

x)      7072 Milburn Estates Dr., O'Fallon, IL, further described as Lot No. 6 of "Final Plat of Milburn Estates," reference being had to the plat thereof recorded in the Recorder's Office of St. Clair County, Illinois, in Book of Plats "106" on page 76;

y)      3223 Fielding Lane, Belleville, IL, further described as Lot No. 13 of "Fox Glenn 2nd Addition, being a part of the northeast quarter of Section 13, T. 1 N., R. 8 W.

21

of the 3rd P.M., Village of Shiloh, St. Clair County, Illinois," reference being had in Plat Book 95 on page 90;

z)      107 Spyglass Court, O'Fallon, IL, further described as Lot No. 85 of "Fourth Addition to Forest Hills at Lincoln Farm part of Section 18, Township 2 North, Range 7 West of the Third Principal Meridian in the City of O'Fallon, St. Clair County, Illinois," reference being had to the Plat thereof recorded in the Recorder's Office of St. Clair County, Illinois, in Book of Plats "99" on page 90;

aa)      1504-1508 West Blvd., Belleville, IL (Bellevegas Liquor);

bb)      201 North 17th Street, Unit 505, St. Louis, MO, further described as Unit 505 of BLU Condominium in the City of St. Louis, in City Blocks 508 and 509, according to the plat thereof recorded in Plat Book 05042007, page 0212, together with the undivided share of the common elements appurtenant thereto, all according to and more particularly described in the declaration of condominium recorded in Book 05042007, page 0211, of the City of St. Louis Recorder's Office;

cc)      201 North 17th Street, Unit 801, St. Louis, MO, further described as Unit 801 of BLU Condominium in the City of St. Louis, in City Blocks 508 and 509, according to the plat thereof recorded in Plat Book 05042007, page 0212, together with the undivided share of the common elements appurtenant thereto, all according to and more particularly described in the declaration of condominium recorded in Book 05042007, page 0211, of the City of St. Louis Recorder's Office;

dd)      201 North 17th Street, Unit 907, St. Louis, MO, further described as Unit 907 of BLU Condominium in the City of St. Louis, in City Blocks 508 and 509, according to the plat thereof recorded in Plat Book 05042007, page 0212, together with

the undivided share of the common elements appurtenant thereto, all according to and more particularly described in the declaration of condominium recorded in Book 05042007, page 0211, of the City of St. Louis Recorder's Office;

ee)     201 North 17th Street, Unit 909, St. Louis, MO, further described as Unit 909 of BLU Condominium in the City of St. Louis, in City Blocks 508 and 509, according to the plat thereof recorded in Plat Book 05042007, page 0212, together with the undivided share of the common elements appurtenant thereto, all according to and more particularly described in the declaration of condominium recorded in Book 05042007, page 0211, of the City of St. Louis Recorder's Office; and

ff)     201 North 17th Street, Unit 1009, St. Louis, MO, further described as Unit 1009 of BLU Condominium in the City of St. Louis, in City Blocks 508 and 509, according to the plat thereof recorded in Plat Book 05042007, page 0212, together with the undivided share of the common elements appurtenant thereto, all according to and more particularly described in the declaration of condominium recorded in Book 05042007, page 0211, of the City of St. Louis Recorder's Office.

6.     If any of the property described above, as a result of any act or omission of the defendants:

a)     cannot be located upon the exercise of due diligence;

b)     has been transferred or sold to, or deposited with, a third party;

c)     has been placed beyond the jurisdiction of the court;

d)     has been substantially diminished in value; or

e)     has been commingled with other property which cannot be divided without difficulty,

23

the United States of America will be entitled to the forfeiture of substitute property pursuant to

Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____

FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____
JAMES C. DELWORTH, #29702MO
ERIN O. GRANGER, #53593MO
Assistant United States Attorneys

24